NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

MAUREEN RICCIO, on behalf of herself and all others similarly situated,

        Plaintiffs,

v.

SENTRY CREDIT, INC., et al.,

        Defendants.

Civil Action No. 17-1773 (BRM)(TJB)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Sentry Credit, Inc.'s ("Sentry") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 9.) Plaintiff Maureen Riccio ("Riccio") opposes the motion. (ECF No. 12.)[1] Pursuant to Federal Rules of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Sentry's Motion for Judgment on the Pleadings is **GRANTED**.

**I.    BACKGROUND**

For the purpose of this Motion, the Court reviews "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988).

---

[1] After Sentry filed its reply (ECF No. 13), the Court granted Riccio's request to file a sur-reply pursuant to Local Civil Rule 7.1(d)(6) (ECF Nos. 14-15). In response to Riccio's sur-reply, Sentry sought leave to reply again. (ECF No. 16.) The Court denied the request, noting it would schedule oral argument should additional information be needed. (ECF No. 18.) Upon review of the papers pursuant to Federal Rule of Civil Procedure 78(b), the Court decided neither oral argument nor an additional reply were necessary.

This dispute arises out of Riccio's putative class action claim, alleging Sentry's debt collection practice violated the Fair Debt Collection Practice Act ("FDCPA") by "fail[ing] to properly inform the least sophisticated consumer that to effectively dispute the alleged debt, such dispute *must* be in writing." (Compl., (ECF No. 1) ¶ 38.) On August 15, 2016, Riccio incurred a financial obligation, which had been assigned to Sentry for debt collection purposes.[2] (ECF No. 1 ¶¶ 15, 21-22.) Sentry mailed a letter (the "Collection Letter") to Riccio in connection with debt. (ECF No. 1-1.) The Collection Letter provided Riccio with a toll-free telephone number, mailing address, and website to contact Sentry concerning the debt. (*Id.*) The letter also stated, in relevant part:

**IMPORTANT NOTICE**

**YOU ARE HEREBY NOTIFIED:**

1. That the above account has been assigned to us for collection.
2. That the above entitled account is in default and your attention is needed to resolve this matter.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Contact us with one our convenient options:

| Mail | CALL: | Online |
|---|---|---|
| SENTRY CREDIT, INC.<br>P.O. Box 12070<br>EVERETT, WA 98206-2070 | Call Toll-Free at:<br><br>800-608-2581 | www.sentrycredit.com<br><br>Mastercard Amex Visa |

---

[2] Riccio initially incurred the debt with M-Shell Consumer Oils for "money, property, insurance or services . . . primarily for personal, family or household purposes." (ECF No. 1 ¶¶ 15-16.) Riccio defaulted on the debt, and M-Shell Consumer Oils sold the financial obligation to JH Portfolio Debt Equities, LLC. (*Id*. ¶¶ 19-20.) Thereafter, JH Portfolio Debt Equities sold Riccio's financial obligation to Sentry for debt collection. (*Id*. ¶ 21.)

(*Id.*) Riccio alleges the Collection Letter violates the FDCPA by providing a debtor with multiple options for contacting Sentry rather than requiring, explicitly, any dispute be in writing, as required by the FDCPA. (ECF No. 1 ¶¶ 38-46.)

On March 15, 2017, Riccio filed her single-count FDCPA Complaint. (ECF No. 1.) On June 23, 2017, Sentry filed, with permission from the Court after filing an Answer, this Motion for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 3, 8, 9.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau*, 539 F.3d at 221 (citing *Jablonski*, 863 F.2d at 290–91). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards applicable to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff

has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

"While a complaint attacked by a Rule 12[] motion . . . does not need detailed factual allegations," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

Sentry argues it is entitled to judgment as a matter of law because the language in the Collection Letter complies with the FDCPA requirements and would not mislead or confuse the least sophisticated consumer. (ECF No. 9 at 13.) Sentry claims the "consumer's rights to dispute the debt under [§] 1692g are clearly and effectively communicated and are not overshadowed or contradicted by accompanying messages from [Sentry]." (*Id.* at 7.) Riccio argues the Collection Letter violates the FDCPA because "[t]he least sophisticated consumer upon reading the [Collection Letter] would be confused as to what she must do to effectively dispute the alleged debt" and "would be mislead into believing that if she wished to dispute the alleged debt or any portion thereof, she may (1) notify [Sentry] in writing at the address provided or (2) she may call the toll[-]free number provided." (*Id.* ¶¶ 39-40.) Riccio alleges Sentry failed to take necessary steps to ensure the Collection Letter complied with the law and "knew or should have known its actions violated the FDCPA." (*Id.* ¶¶ 32-33.)

Congress enacted the FDCPA in 1977 as a result of the abundance of "evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(a), (b). *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)) (noting the stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses). At the time, Congress

was concerned that "[a]busive debt collection practices contribute[d] to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

"Because the FDCPA is a remedial statute, we construe its language broadly so as to effect its purpose." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). Accordingly, communications from lender to debtors are analyzed from the perspective of the "least sophisticated debtor." *Brown*, 464 F.3d at 454. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Id.* at 453 (citation omitted). Although the "least sophisticated debtor" standard is a legal standard, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000) (citation omitted). "Even the least sophisticated debtor is bound to read collection notices in their entirety." C*ampuzano–Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008).

To succeed on an FDCPA claim, a plaintiff must establish that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299,

303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Here, the parties agree Sentry's debt collection letter is governed by and required to comply with the FDCPA, and therefore, only the fourth prong—Sentry's alleged violation of the FDCPA—is disputed. (ECF No. 9 at 8 and ECF No. 12 at 5, 6, 10.)

Riccio asserts the Collection Letter violates two specific provisions of the FDCPA: (1) 15 U.S.C. § 1692g, which concerns the validation notice requirements necessary to inform consumers of their rights [3]; and (2) 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Significantly, both alleged violations are based on the same conduct—whether the three displayed boxes ("Display Boxes") containing "several 'convenient options' to contact [Sentry] . . . leav[es] [Riccio] uncertain as to her rights and what she must do to effectively dispute the debt." (ECF No. 12 at 9.) As [Riccio] concedes in her opposition brief, "[w]hen allegations under 15 U.S.C. § 1692e(10) are based on the same language or theories as allegations under 15 U.S.C. § 1692g, the analysis of the § 1692g claim is usually dispositive." (*Id*. at 11 (citing *Caprio*, 709 F.3d at 155).) *See also Cruz v. Fin. Recoveries*, No. 15-753, 2016 U.S. Dist. LEXIS 83576, at *11 (D.N.J. June 18, 2016) (ruling "when language is upheld pursuant to Section 1692g, that analysis is usually dispositive for Section 1692e"). Accordingly, the analysis under the § 1692g claim is dispositive of Riccio's § 1692e(10) claim, and therefore, the Court begins its analysis there.

Riccio claims Sentry "violated 15 U.S.C. § 1692g(a)(3) by failing to effectively inform

---

[3] A validation notice contains "the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so." *Wilson*, 225 F.3d at 354.

Riccio what she must do in order to dispute the alleged debt." (ECF No. 1 ¶ 42.) Under § 1692g(a)(3), the FDCPA requires a debt collector to send the consumer a written notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Further, any "dispute of a debt must be in writing in order to be effective in this Circuit." *Caprio v. Healthcare Revenue Recovery Grp, LLC*, 709 F.3d 142, 146 (3d Cir. 2013).

> The Collection Letter mailed to Riccio contains, in relevant part, the following language:
>> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(ECF No. 1-1.)

Here, it is clear from the plain language of Sentry's Collection Letter a dispute of the debt must be communicated in writing within thirty days. Riccio, however, argues the Collection Letter improperly "provides [Riccio] with several 'convenient options' to contact them, which overshadows the Section 1692g notice in [Riccio's] letter, leaving the least sophisticated consumer uncertain as to her rights, as a dispute of a debt within the Third Circuit can only be accomplished via writing, and not by telephone." (ECF No. 12 at 7.) The Collection Letter contains the following Display Boxes:

|Mail|CALL:|Online|
|---|---|---|
|SENTRY CREDIT, INC.<br>P.O. Box 12070<br>EVERETT, WA 98206-2070|Call Toll-Free at:<br><br>800-608-2581|www.sentrycredit.com<br><br>Mastercard Amex Visa|

Contact us with one our convenient options:

(ECF No. 1-1.)

A debt collection letter fails to meet the requirements of § 1692g when "the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Wilson*, 225 F. 3d at 355 (citing *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)). In *Caprio*, the validation notice was contradicted by accompanying language stating, "if you feel you do not owe this amount, please call us toll[-]free at 800-984-9115 or write us at the above address." 709 F.3d at 150. The court found "the least sophisticated debtor could reasonably believe that he could effectively dispute the validity of the debt by making a telephone call." *Id*. at 151. The *Caprio* court "acknowledge[d] that [the] 'please call' language could be read as nothing more than a mere invitation given other aspects of the Collection Letter," but ultimately found the validation notice failed the least sophisticated debtor standard because the "document instructed [the plaintiff] to call or write 'if you feel you do not owe this amount.'" 709 F.3d at 151.

Here, Sentry's Collection Letter specifically requires Riccio to "notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt." (ECF No. 1-1.) No additional language appears on the Collection Letter asking or suggesting to consumers a dispute of the debt may be made via telephone call. (*See id.*) The Collection Letter does not instruct Riccio to call if she feels she does not owe the debt. (*Id.*) The Display Boxes Riccio

9

contests merely provide consumers with Sentry's contact information. (*Id.*) Indeed, language nearly identical to that provided by Sentry has been upheld by in this District. *Hernandez v. Mercantile Adjustment Bureau, LLC*, No. 13-0843, 2013 U.S. Dist. LEXIS 166836, at *10-11 (D.N.J. Nov. 22, 2013).[4]

Riccio attempts to both rely on and distinguish the Collection Letter from the letters at issue in *Panto v. Prof'l Bureau of Collections* and *Cruz v. Fin. Recoveries*. (ECF No. 17 at 3.) In both *Panto* and *Cruz*, the defendant's debt collection letters requested additional information from consumers in connection with the debt. *See Cruz*, No. 15-0753, 2016 U.S. Dist. LEXIS 83576 (D.N.J. June 18, 2016); *Panto*, No. 10-4340, 2011 U.S. Dist. LEXIS 23328 (D.N.J. Mar. 7, 2011). In those cases, the court found the additional language did not overshadow the language required by the FDCPA. *Cruz*, No. 15-0753, 2016 U.S. Dist. LEXIS 83576 (D.N.J. June 18, 2016) (finding the additional language, "[i]f you have insurance that may pay all or a portion of this debt, that information can be submitted by calling . . ." does not overshadow the dispute language contained in the letter); *Panto*, No. 10-4340, 2011 U.S. Dist. LEXIS 23328 (finding the additional language,

---

[4] The letter in that case stated:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such a judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Hernandez*, No. 13-0843, 2013 U.S. Dist. LEXIS 166836, at *1. The Court found the letter did not violate § 1692. (*Id.* at *10-11.)

"[i]f you are represented by an attorney in regards to this debt, print his or her name, address and phone number on the stub of this letter and return it to our office" does not overshadow the disputed language contained in the letter). Riccio argues the Collection Letter includes additional language but that, unlike *Panto* and *Cruz*, it overshadows the FDCPA language. The Court is not persuaded by Riccio's argument and finds the Collection Letter, when read as a whole, does not contain overshadowing language. *See Hernandez*, No. 13-0843, 2013 U.S. Dist. LEXIS 166836, at *10-11.

> Moreover, Riccio claims the Display Boxes are deceptive because:
>
>> The instructions provided in the prominently displayed box in [Sentry's] debt collection letter can be read by the least sophisticated consumer, who wishes to dispute the alleged debt, in the following ways, one of which is inaccurate. . . . (1) If [Riccio] wants to dispute the debt, she can write [Sentry] via 'Mail' at Box 12070, Everett, WA 98206-2070; or (2) If [Riccio] wants to dispute the debt, she can 'Call' [Sentry] at 800-608-2581.

(ECF No. 12 at 11.) In reviewing the Collection Letter, Riccio's contention is not supported by the facts. The Collection Letter is void of any reference stating "[i]f [Riccio] wants to dispute the debt, she can 'Call' [Sentry]." *Id*. Significantly, the Display Boxes Riccio contests fall outside the boundaries of the much larger text box, captioned with an all capital, bold typeface text titled "IMPORTANT NOTICE" ("Important Notice Box") positioned on top of the front page of the letter. *Wilson*, 225 F.3d at 352 (noting both "form" and "substance" of the debt collection letter is examined to determine whether the validation notice is overshadowed or contradicted). The Important Notice Box contains the language notifying consumers a dispute of the debt must be made in writing within thirty days. *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Even the least sophisticated debtor is bound to read collection notices in

11

their entirety."). There is no reference to a phone number or a request for consumers to call in the entirety of the Important Notice Box.

The Display Boxes of which Riccio complains is preceded by the language, "[c]ontact us with one of our convenient options," followed by Sentry's address, phone number, and website. (ECF No. 1-1) The Display Boxes do not instruct nor suggest an alternative method of disputing the alleged debt, but merely provide the consumer with Sentry's contact information. Accordingly, Sentry's debt collection letter does not violate § 1692g—and therefore does not violate § 1692e(10)—of the FDCPA. Sentry's Motion is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, Sentry's Motion for Judgment on the Pleadings is **GRANTED**. An appropriate Order will follow.

**Date: January 31, 2018**                                    */s/ Brian R. Martinotti*
                                                              **HON. BRIAN R. MARTINOTTI**
                                                              **UNITED STATES DISTRICT JUDGE**